UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GURTEJ SINGH,

           Petitioner,

  v.

MICHAEL CHERTOFF, Secretary, Department of Homeland Security; CHARLES DeMORE; NANCY ALCANTAR; MARK CHANDLESS; and EMILIA BARDINI,

           Respondents.
_____/

No. C 05-1454 MHP

**MEMORANDUM & ORDER**
**Re: Respondents' Motion to Dismiss; Petition for Writ of Habeas Corpus**

On April 8, 2005, petitioner Gurtej Singh filed in this court a petition for writ of habeas corpus alleging that the termination of his asylum status violated his right to due process of the law under the Fifth Amendment of the United States Constitution. Respondents now move to dismiss Singh's petition for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, urge the court to deny Singh's due process claim on the merits. Having considered the parties' arguments and submissions and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

On August 22, 2002, the United States Customs and Immigration Services ("CIS") granted asylum status to petitioner Gurtej Singh in reliance upon Singh's representation that his membership in Akali Dal, a Sikh separatist movement, caused him to be arrested and tortured by authorities in his native country of India. However, CIS subsequently discovered evidence that Singh's claim of

persecution had been fabricated by an immigration consultant who had assisted Singh in preparing his asylum application. This discovery led CIS to terminate Singh's asylum status on December 16, 2004. See 8 C.F.R. § 208.24(a)(1). CIS also initiated removal proceedings against him on the same date. Singh's removal hearing was originally scheduled for June 27, 2005, but was continued at Singh's request until August 22, 2005 in order to allow Singh to receive a copy of his Alien file, which he had requested under the Freedom of Information Act. Johnston Dec. ¶¶ 9, 11–12.

CIS seeks to remove Singh on the ground that he is present in the United States without admission or parole in violation of 8 U.S.C. section 1182(a)(6)(A)(i) and that he is an alien present in this country without a valid entry document or immigrant visa in violation of 8 U.S.C. section 1182(a)(7)(A)(i)(I). In response, Singh has filed a new application with CIS in which he seeks to establish his eligibility for asylum. Pending the final resolution of these issues, Singh is in custody at Yuba County Jail in Marysville, California.

On April 8, 2005, Singh filed the instant petition for habeas corpus in this court, alleging that CIS violated his due process rights in terminating his asylum status and identifying Homeland Security Department Secretary Michael Chertoff, various officials in CIS's San Francisco District Office, and the Warden of Yuba Country Jail as respondents. Specifically, Singh's petition asserts that his due process rights were violated when CIS failed to hold an evidentiary hearing prior to terminating his asylum status. In addition, Singh alleges that CIS denied him due process of law by failing to provide him with the opportunity to cross-examine the witnesses who had informed CIS of the allegedly false statements in his asylum application.

On July 1, 2005, respondents moved to dismiss Singh's petition, arguing that this court lacks jurisdiction to entertain Singh's constitutional claim under the habeas corpus statute, 28 U.S.C. section 2241. In the alternative, respondents urge the court to deny Singh's due process claim on the merits. Singh opposes respondents' motion to dismiss and filed a traverse in response on July 18, 2005. The following memorandum and order address the arguments raised in the parties' pleadings and papers and at the hearing held in this matter on August 8, 2005.

LEGAL STANDARD

I.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court. See, e.g., Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039-40 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004). The plaintiff bears the burden of establishing the propriety of the court's jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Consequently, a Rule 12(b)(1) motion will be granted if the complaint, when considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. Savage, 343 F.3d at 1039 n.2; Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Alternatively, a defendant may seek dismissal under Rule 12(b)(1) by presenting evidence to refute the jurisdictional facts alleged in the complaint. Id. Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage, 343 F.3d at 1039 n.3 (citation omitted).

II.  Habeas Corpus Jurisdiction

As a general rule, 28 U.S.C. section 2241 confers jurisdiction upon the district court to entertain petitions for a writ of habeas corpus brought by any individual claiming to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Absent a specific statutory provision limiting the scope of its habeas jurisdiction, a district court has the authority to entertain constitutional questions raised by aliens detained by federal immigration officials. INS v. St. Cyr, 533 U.S. 289, 314 (2001); Nakaranurack v. United States, 68 F.3d 290, 293 (9th Cir. 1995). However, as a prudential matter, the Ninth Circuit generally requires aliens detained by CIS or by the Attorney General to exhaust available administrative remedies before seeking habeas corpus relief. See Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001) (citing United States v. Pirro, 104 F.3d 297, 299 (9th Cir. 1997), and Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990)).

DISCUSSION

I.      Respondents' Motion to Dismiss

In adjudicating respondents' motion to dismiss, the court must address the threshold question of whether it has jurisdiction to entertain Singh's constitutional claim under 28 U.S.C. section 2241. In arguing that no such jurisdiction exists, respondents rely primarily on section 242(b)(9) of the Immigration and Nationality Act ("INA"), 8 U.S.C. section 1252(b)(9). Following its amendment by the recently enacted REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (codified as amended at 8 U.S.C. § 1252), section 1252(b)(9) provides that the court of appeals is the exclusive forum in which any questions of law or fact "arising from any action taken or proceeding brought to remove an alien from the United States" may be adjudicated. 8 U.S.C. § 1252(b)(9); see also 8 U.S.C. §§ 1252(a)(1), 1252(a)(5). According to respondents, Singh's challenge to the procedures used in terminating his asylum status arises out of CIS's attempt to remove him from the United States, which would preclude this court from exercising jurisdiction over his due process claim. Singh, on the other hand, argues that the asylum termination process precedes and is legally distinct from the ongoing deportation proceedings, and therefore does not "aris[e] from" deportation proceedings as required by section 1252(b)(9).

Thus framed, resolution of the disputed jurisdictional issue in this action turns on whether a decision to revoke an alien's asylum status is an "action taken or proceeding brought to remove an alien from the United States," as is required to bring a challenge to that decision within the scope of section 1252(b)(9)'s jurisdictional bar. 8 U.S.C. § 1252(b)(9). Admittedly, the INA and its implementing regulations leave little doubt that the revocation of a grant of asylum almost invariably leads CIS to initiate removal proceedings against the asylum-seeker. Specifically, 8 U.S.C. section 1158(c), which authorizes CIS to terminate an alien's asylum status, states that an alien whose asylum status is revoked pursuant to paragraph (2) of that subsection is subject to deportation on numerous grounds and permits the Attorney General to initiate removal proceedings against that individual. 8 U.S.C. § 1158(c)(3). Likewise, 8 C.F.R. section 208.24(e) provides that CIS "shall initiate removal proceedings, as appropriate" upon terminating an alien's asylum status. 8 C.F.R. §

4

1   208.24(e). Nevertheless, it is clear that both the statute and the above-cited regulatory provision
2   characterize the initiation of removal proceedings as a separate action that CIS must take if it wishes
3   to remove an alien from the country after it revokes a grant of asylum.
4         Furthermore, despite the fact that the relevant provision of the implementing regulations
5   includes mandatory language (i.e., "shall"), the regulations further instruct CIS to initiate removal
6   proceedings only when it is "appropriate" to do so, 8 C.F.R. section 208.24(e), thereby suggesting
7   that there may be circumstances where an action to remove an alien does not follow necessarily from
8   the termination of the alien's asylum status. In other words, the fact that the revocation of an alien's
9   asylum status almost inevitably causes CIS to initiate removal proceedings against the alien does not
10  mean that the two actions are the same.
11        Finally, CIS may undertake to terminate asylum status through two different procedures.
12  First, as in petitioner's case, CIS may conduct an interview at the asylum office. 8 C.F.R. §
13  208.24(f). Second, CIS may elect to "vest the Immigration Court with jurisdiction over the
14  termination proceedings." Id. Under the second procedure, an immigration judge decides whether to
15  terminate asylum status as part of the removal hearing itself. While it might be the case that
16  termination under the second procedure is part of the removal proceeding, and thus beyond the scope
17  of this court's jurisdiction, termination under the first procedure is not. The court therefore
18  concludes that the termination of petitioner's asylum status was not an "action taken or proceeding
19  brought to remove an alien from the United States." Consequently, such an action falls outside the
20  scope of the jurisdictional bar set forth in the REAL ID Act and codified at 8 U.S.C. § 1252(b)(9).
21        In light of this conclusion, the court may safely look to pre-REAL ID Act case law in
22  determining whether it has jurisdiction over Singh's due process claims. Of particular relevance
23  here is the Fourth Circuit's opinion in Selgeka v. Carroll, 184 F.3d 337 (4th Cir. 1999). In Selgeka,
24  an alien challenged the adequacy of the same interview-only procedure at issue in this lawsuit,
25  claiming that he had been deprived of due process when the Immigration and Naturalization Service
26  ("INS"), CIS's predecessor agency, refused to hold a hearing on his asylum application and failed to
27  prepare a record of the administrative proceedings. Id. at 341. On appeal of the district court's order

1  denying the applicant's habeas corpus petition on a number of nonjurisdictional grounds, the
2  government urged the Fourth Circuit to dismiss the petition for want of subject matter jurisdiction.
3  Id. Specifically, the respondents argued that 8 U.S.C. section 1252(g), which grants the court of
4  appeals' exclusive jurisdiction to review claims arising out of decisions or actions "to commence
5  proceedings, adjudicate cases, or execute removal orders against any alien under [the INA]"
6  precluded the district court from exercising habeas corpus jurisdiction over the applicant's claims.
7  Id. The Fourth Circuit disagreed, holding that the applicant's claim that he was entitled to have an
8  immigration judge hear evidence regarding his eligibility for asylum and to have an administrative
9  record of those proceedings prepared by INS did not fall within any of the three categories of
10 decisions that Congress intended to shield from habeas corpus review when it imposed the
11 jurisdictional limitations set forth in section 1252(g). Id. at 341-42. See also Reno v. American-
12 Arab Anti-Discrimination League, 525 U.S. 471, 483 (1999) (section 1252(g) applies only to three
13 "discrete [categories] of actions that the Attorney General may take," those being decisions or
14 actions to commence proceedings against an alien, to adjudicate cases, or to execute removal
15 orders).[1]

16      Here, as well, the procedures used to determine an alien's eligibility for asylum do not
17 involve a decision to "commence proceedings, adjudicate cases, or execute removal orders against"
18 that individual. Indeed, as discussed above, the procedure at issue in this lawsuit was completed
19 before removal proceedings of any kind were commenced. Thus, for the reasons stated above, the
20 court concludes that neither section 1252(g) nor section 1252(a)(9) bars it from exercising
21 jurisdiction over Singh's petition for writ of habeas corpus. The court therefore has jurisdiction to
22 entertain Singh's due process claim under 28 U.S.C. section 2241.[2]

23      The fact that the court has jurisdiction to hear Singh's due process claim does not necessarily
24 mean that jurisdiction should be exercised at this time. It is well-established that an alien seeking
25 relief under 28 U.S.C. section 2241 must generally exhaust all available administrative and judicial
26 remedies before filing a habeas petition in district court. Huang v. Ashcroft, 390 F.3d 1118, 1123
27 (9th Cir. 2004); Castro-Cortez, 239 F.3d at 1047. However, this requirement is a prudential rather

28

than jurisdictional limitation on the court's authority, id., and as such, there are a number of circumstances where a district court may entertain claims brought by aliens subject to ongoing deportation proceedings.  In particular, the Ninth Circuit has observed that because "the purpose of exhaustion is to allow administrative agencies to complete their own decisionmaking procedures and to discourage premature judicial intervention," it "makes little sense" to require exhaustion of administrative remedies where there would be no meaningful opportunity to review the constitutional issues raised in a habeas petition if adjudication of the petitioner's claims were delayed until after deportation proceedings had been completed.  Xiao v. Barr, 979 F.2d 151, 154 (9th Cir. 1992) (quoting Legalization Assistance Project v. INS, 976 F.2d 1198, 1203 (9th Cir. 1992)).

Here, Singh argues that the Due Process Clause entitles him to an evidentiary hearing at a particular stage in the administrative process, i.e., before he was stripped of asylum status and hence his ability to work and live legally in the United States.  As this claim turns on the time at which such a hearing must be held—there is no dispute that Singh will have an opportunity to present evidence to an immigration judge before he can be lawfully removed from the country—he would have no "real opportunity" to correct the asserted violation of his due process rights if he were forced to exhaust administrative and judicial remedies before seeking habeas relief.  The court therefore finds that requiring Singh to exhaust administrative and judicial remedies before pursuing his due process claim in habeas proceedings would be inappropriate.

II.  Singh's Due Process Claim

Having concluded that it has jurisdiction to entertain Singh's petition for habeas corpus and that his due process claim is ripe for judicial review, the court must now address that claim on the merits.  Singh argues that CIS was required to provide him with the opportunity to have an immigration judge consider evidence of his eligibility for asylum and to have CIS's case against him put to the test of cross-examination by counsel before his asylum status could be lawfully terminated. According to Singh, CIS deprived him of his Fifth Amendment rights when it revoked his asylum

1  status in reliance upon statements that he made during a nonadversarial interview with an asylum
2  officer and information provided by third-party witnesses.
3     In Mathews v. Eldridge, 424 U.S. 319 (1976), the Supreme Court set forth the formula for
4  determining whether the decisionmaking procedures employed by a government agency violate due
5  process.  Under that formula, a court considering allegations that the government violated an
6  individual's procedural due process rights must weigh (1) the nature of the private interest affected
7  by the government action; (2) the risk that the procedures used by the government might erroneously
8  deprive an individual of that interest and the probable value of additional procedural safeguards in
9  guarding against that risk; and (3) the government's interest in using its own procedures and the
10 fiscal or administrative burdens that requiring additional procedural safeguards would impose.  Id. at
11 335 (citing Goldberg v. Kelly, 397 U.S. 254, 266-71 (1970)).
12    In the context of immigration proceedings, a number of courts, including the Ninth Circuit,
13 have interpreted these considerations to require the government to hold an evidentiary hearing at
14 some point in time prior to removing an alien from the United States.  See, e.g., Castro-Cortez, 239
15 F.3d at 1049 (citing Getachew v. INS, 25 F.3d 841, 845 (9th Cir. 1994)) (observing that "[t]he Due
16 Process Clause requires that aliens 'threatened with deportation' are provided the right to 'a full and
17 fair hearing'"); Selgeka, 184 F.3d at 342 (holding that an alien has a due process right to have his or
18 her claim of asylum heard by an immigration judge prior to being deported); Marincas v. Lewis, 92
19 F.3d 195, 203 (3d Cir. 1996) (holding that asylum procedures must at a minimum provide for a
20 hearing before a neutral judge and for the preparation of a complete record of the administrative
21 proceedings), reh'g and reh'g en banc denied, 97 F.3d 733 (3d Cir. 1996).  In light of these
22 authorities, there is no question that Singh must receive some opportunity to appear before a neutral
23 judge and to dispute the findings of the asylum officer before he can be lawfully deported.
24    In contrast to the aliens in the above-cited cases, all of which arose in the context of an alien
25 facing an order of deportation, Singh claims that he was entitled to an evidentiary hearing prior to the
26 termination of the asylum status that had been previously been conferred upon him.  The court finds
27 this difference to be dispositive.  There is little doubt that the removal of an alien from the United
28

States deprives that individual of a profoundly important substantive interest.  See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (noting that "aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law") (citations omitted).  On the other hand, a grant of asylum itself is provisional in nature and may be terminated at the sound discretion of the Attorney General.  See 8 U.S.C. § 1158(c)(2) (providing that a grant of asylum "does not convey a right to reside permanently in the United States" and may be terminated if the Attorney General finds that an asylee meets any of the conditions set forth in section 1158(c)(2)(A)-(E)); Nuru v. Gonzales, 404 F.3d 1207, 1229 (9th Cir. 2005) (noting the discretionary nature of the Attorney General's authority under section 1158).  For these reasons, the "private interest" at stake in terminating a grant of asylum carries markedly less weight than that which is at stake when an alien is removed from the United States.

        That is not to say that due process affords no protection to an alien who faces the revocation of his or her asylum status.  However, as respondents correctly observe, CIS regulations provide that an alien must be given notice of its intent to terminate his or her asylum status and an opportunity to challenge the grounds on which that notice issued.  See 8 C.F.R. § 208.24(c).  Moreover, any alien whose asylum status is terminated has the opportunity to reapply for asylum and establish his or her eligibility for asylum status during deportation proceedings brought under 8 C.F.R. section 208.24(e).  See generally 8 C.F.R. § 1208.2.  Such proceedings afford an alien the full panoply of procedural protections that attach when CIS seeks to remove an individual from the United States, including the right to examine the evidence against him or her, the right to present evidence to support his or her case, and the right to cross-examine witnesses presented by the government.  See 8 U.S.C. §§ 1229a(b)(2), (4).

        Petitioner notes that the termination interview at issue in this lawsuit is only one of two procedures that CIS may use to terminate asylum status.  Alternatively, CIS can allow the immigration court to consider whether termination is appropriate during removal proceedings.  8 C.F.R. § 208.24(f).  Petitioner argues that this alternate procedure is more appropriate where, as is

9

1  the case here, the grounds for termination depend in part on the testimony of a third party who would
2  be subject to cross examination at the removal hearing.  While this court agrees that delaying
3  termination of petitioner's asylum status to the time of the removal hearing would have provided
4  petitioner with greater procedural protection, the effect on petitioner is less severe than in cases such
5  as Selgeka, in which stowaways would otherwise have received no hearing prior to deportation.  See
6  184 F.3d at 342.  The question presented in this petition is somewhat less fundamental:  not *whether*
7  a full hearing should take place, but *when*.

8  It is also not clear that use of the alternate procedure would have improved petitioner's
9  current condition.  Petitioner alleges two deprivations as a result of the termination of his asylum
10  status.  First, petitioner has been held in custody and prevented from working pending the outcome
11  of his removal proceeding.  Second, having been stripped of his asylum status, petitioner now has the
12  burden of proving for the second time that he is entitled to asylum.

13  With respect to petitioner's current detention and inability to work, 8 U.S.C. section 1226(a)
14  provides the Attorney General broad discretion to detain aliens awaiting removal.  Section 1226(a)
15  applies to aliens who have been granted asylum as well as those who have not.  Without considering
16  whether section 1226(a) is constitutional as applied in all cases, petitioner has made no argument
17  that he would not presently be detained if CIS had followed the alternate procedure, or that he has
18  been unable to obtain release on bail based on the review of an Immigration Judge as a result of the
19  loss of his asylum status.  See Zabadi v. Chertoff, No. C 05-01796 WHA, 2005 WL 1514122 at *2
20  (N.D. Cal. Jun. 7, 2005) (Alsup., J.) (holding that the Bureau of Immigration and Customs
21  Enforcement may not obtain an automatic stay of an Immigration Judge's order granting release);
22  Zavala v. Ridge, 310 F. Supp. 2d 1071, 1079 (N.D. Cal. 2004) (White, J.) (same).

23  With respect to the shift in the burden of proof, under the alternate procedure proposed by
24  petitioner, CIS would have the burden to prove by a preponderance of the evidence that petitioner
25  obtained his asylum status by fraud.  8 C.F.R. §§ 208.24(f), (a)(1).  Instead, it appears that petitioner
26  now has the burden of proving entitlement to asylum by a preponderance of the evidence.  8 C.F.R. §
27  1240.8(d) ("The respondent shall have the burden of establishing that he or she is eligible for any
28

10

requested benefit or privilege and that it should be granted in the exercise of discretion"). This is a lower burden than aliens generally face in proving they are lawfully entitled to be present in the United States. Id. § 1240.8(c) (setting forth a "clearly and beyond a doubt" standard of proof). Requiring petitioner to prove he is entitled to asylum does not set up any presumption in CIS's favor. In a case such as this, where both petitioner and CIS have evidence to present on the question of petitioner's eligibility for asylum, both parties in effect have the burden of coming forward with a preponderance of evidence in their favor. Any theoretical shift in burden has little, if any, practical effect.

Taken as a whole, the procedural protections provided to petitioner are sufficient to comport with the requirements of due process, notwithstanding the fact that the evidentiary hearing to which Singh concedes he is entitled has yet to take place. Nor is there any dispute that CIS has to date failed to comply with the aforementioned statutory and regulatory requirements for lawfully terminating Singh's asylum status. The court therefore concludes that the procedures employed in making that determination satisfied the requirements of due process. Accordingly, Singh's petition for habeas corpus is denied.

CONCLUSION

For the reasons stated above, the court DENIES respondents' motion to dismiss for lack of subject matter jurisdiction and DENIES Singh's petition for writ of habeas corpus. The clerk shall close the file.

IT IS SO ORDERED

Date: August 24, 2005

_____
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# ENDNOTES

1. Section 106(a)(3) of the REAL ID Act amended 8 U.S.C. section 1252 to add the following clarifying text: "...notwithstanding any other provision of law, *(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title....*" REAL ID Act § 106(a)(3). This clarification restricts the remedies that are available to aliens, but does not broaden the scope of actions by the Attorney General that are intended to be immune to judicial review.

2. In light of the court's conclusion that neither 8 U.S.C. section 1252(a)(9) nor 8 U.S.C. section 1252(g) bars habeas review of Singh's claims, the court need not consider the question of whether such a bar would be constitutionally permissible. Cf. St. Cyr, 533 U.S. at 299-300 (noting that interpreting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to preclude habeas corpus review of deportation orders entered against aliens convicted of a deportable criminal offenses "would raise serious constitutional problems"). Other courts, faced with that question, have been sharply critical of Congress's attempt to limit this court's habeas jurisdiction. See, e.g., Enwonwu v. Chertoff, No. CIV.A. 05-10511-WGY, 2005 WL 1631121 at *1 (D. Mass. Jul. 12, 2005) (noting that "direct congressional interference in a pending case is virtually unprecedented in all our history").